UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HCC LIFE INSURANCE COMPANY,                No. 2:07-cv-02542-MCE-DAD

       Plaintiff,

   v.                                     <u>MEMORANDUM AND ORDER</u>

MANAGED BENEFIT ADMINISTRATORS
LLC; and ANTHEM BLUE CROSS
LIFE AND HEALTH INSURANCE
COMPANY, formerly known as
BC LIFE AND HEALTH INSURANCE
COMPANY,

       Defendants.

----oo0oo----

The Nevada Irrigation District ("NID") filed a demand for arbitration against HCC Life Insurance Company ("Plaintiff" or "HCC Life"), Managed Benefit Administrators, LLC ("MBA"), and Anthem Blue Cross Life and Health Insurance Company ("BC") arising out of a $3,000,000 claim under NID's insurance policy. In the arbitration proceeding, Plaintiff filed a cross-demand against MBA and BC, asserting that, to the extent Plaintiff is liable to NID, MBA and BC are liable to Plaintiff.

1

After the arbitration panel dismissed the cross-demand, Plaintiff brought this action against MBA and BC. Presently before the Court is Plaintiff's Motion to Compel Arbitration.  Because no contract exists between HCC Life and MBA or between HCC Life and BC, and because this case does not satisfy the criteria under which a nonparty to an arbitration agreement is bound by another party's consent, Plaintiff's Motion to Compel Arbitration is denied.[1]

**BACKGROUND**

HCC Life provided a stop loss insurance policy to NID. Under the policy, NID established a self-funded health plan for its employees, while Plaintiff insured NID for medical expenses in excess of the policy's deductibles.  To be subject to reimbursement under the policy, NID's expenses had to be both covered by the policy and by NID's self-funded health plan.  The agreement between Plaintiff and NID required that any controversy or dispute arising out of or relating to the policy would be settled by arbitration.

Defendant MBA, formerly known as Acclaim Administrators, and Defendant BC, formerly known as BC Life & Health Insurance Company, contracted with NID to review, process, adjudicate, and pay or deny claims under NID's self-funded health plan.  Both MBA and BC have individual contracts with NID and each of those contracts contain arbitration clauses.

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

1    Stephen Paulus, a former NID employee covered by NID's
2    insurance policy, underwent surgery at Sutter Memorial Hospital
3    on September 22, 2005 to repair his mitral heart valve.  As a
4    result of alleged complications from the surgery, Mr. Paulus died
5    on November 5, 2005.  Sutter Memorial Hospital submitted
6    approximately $3,000,000 in charges to NID.  NID paid at least
7    part of this claim and, on October 24, 2006, Plaintiff paid
8    $423,282.98.

9    NID filed a demand for arbitration with the American
10   Arbitration Association against Plaintiff, MBA, and BC seeking
11   reimbursement of $1,500,000 from Plaintiff under the stop loss
12   policy.  NID also sought exemplary and punitive damages against
13   Plaintiff.  NID alleged that "MBA breached its Administrator
14   Services Agreement and negligently performed its third party
15   administrator duties, or BC Life & Health negligently performed
16   its utilization review function, and as a consequence NID paid,
17   and has been denied reimbursement for, medical expenses for ...
18   Stephen H Paulus...."  Compl. 2:16-20.  The arbitration
19   proceeding is currently pending.

20   Plaintiff filed a cross-demand in the arbitration
21   proceeding, seeking reimbursement from MBA and BC for amounts
22   already paid to NID and for any future amounts owed to NID.  On
23   October 9, 2007, the arbitration panel granted MBA and BC's
24   motion to dismiss the cross-demand, but did not provide an
25   explanation for the decision.
26   ///
27   ///
28   ///

3

1    Plaintiff subsequently brought this action against BC and

2  MBA.  Plaintiff seeks the same relief it sought in its cross-

3  demand that the arbitration panel dismissed:  equitable

4  subrogation, equitable contribution, equitable indemnity, and

5  declaratory relief.  Plaintiff alleges that BC and MBA failed to

6  perform their duties under their respective contracts with NID

7  and that their actions resulted in excessive and unnecessary

8  medical procedures and services, experimental and investigative

9  medical procedures and services, and charges above reasonable and

10  customary amounts.  Plaintiff now moves to compel arbitration on

11  those claims.

12                              **STANDARD**

13    "An order to arbitrate ... should not be denied unless it

14  may be said with positive assurance that the arbitration clause

15  is not susceptible of an interpretation that covers the asserted

16  dispute."  <u>United Steelworkers of Am. v. Warrior & Gulf</u>

17  <u>Navigation Co.</u>, 363 U.S. 574, 582-83 (1960).  Any doubts should

18  be resolved in favor of arbitration.  <u>Id</u>. at 583.  In making this

19  determination, a court looks only at whether the parties agreed

20  to arbitrate the claim, not to the merits of the of the claim

21  itself.  <u>AT & T Techs. Inc.</u>, 475 U.S. at 649-50.  In determining

22  the existence of an agreement to arbitrate, the district court

23  looks to "general state-law principles of contract

24  interpretation, while giving due regard to the federal policy in

25  favor of arbitration."  <u>Wagner v. Stratton Oakmont, Inc.</u>, 83 F.3d

26  1046, 1049 (9th Cir. 1996).

27  ///

28  ///

                                 4

1    "On petition of a party to an arbitration agreement ... the
2    court shall order the [parties] to arbitrate the controversy if
3    it determines that an agreement to arbitrate the controversy
4    exists." Cal. Civ. Proc. Code § 1281.2. The right to
5    arbitration depends on the existence of an agreement to
6    arbitrate, and a party cannot be forced to arbitrate in the
7    absence of such an agreement. <u>Frederick v. First Union Secs.,</u>
8    <u>Inc.,</u> 100 Cal. App. 4th 694, 697 (Ct. App. 2002). "The strong
9    public policy in favor of arbitration does not extend to those
10   who are not parties to an arbitration agreement, and a party
11   cannot be compelled to arbitrate a dispute that he has not agreed
12   to resolve by arbitration." <u>Lee v. S. Cal. Univ. for Prof'l</u>
13   <u>Studies</u>, 148 Cal. App. 4th 782, 786 (Ct. App. 2007). "Very
14   limited circumstances exist under which a nonparty to an
15   arbitration agreement can be bound by someone else's consent...."
16   <u>Id</u>.

17   Because the existence of an arbitration agreement is a
18   statutory prerequisite to granting a petition to compel
19   arbitration, the petitioner bears the burden of proving the
20   agreement exists by a preponderance of the evidence. <u>Rosenthal</u>
21   <u>v. Great W. Fin. Secs. Corp.,</u> 14 Cal. 4th 394, 413 (Cal. 1996).

22

23                              **ANALYSIS**

24

25   Under the Federal Arbitration Act (FAA), arbitration
26   agreements "shall be valid, irrevocable, and enforceable, save
27   upon such grounds as exist at law or in equity for the revocation
28   of any contract." 9 U.S.C. § 2.

1   While the FAA and the California Arbitration Act (CAA) express a
2   strong public policy in favor of enforcing arbitration
3   agreements, this policy does not arise until an enforceable
4   agreement is established.  Baker v. Osborne Dev. Corp., 159 Cal.
5   App. 4th 884, 892 (Ct. App. 2008).  "[A]lthough the FAA governs
6   the interpretation of arbitration clauses, California law governs
7   whether an arbitration agreement has been formed in the first
8   instance, and whether an arbitration agreement exists is an issue
9   for judicial determination."  Id. at 893.

10      The right to arbitration depends upon contract.  Romo v. Y-3
11  Holdings, Inc., 87 Cal. App. 4th 1153, 1158 (Ct. App. 2001).
12  When presented with a petition to compel arbitration, a trial
13  court's first task is to determine whether the parties have in
14  fact agreed to arbitrate the dispute.  Id.  Generally, one must
15  be a party to an arbitration agreement to be bound by it.
16  Buckner v. Tamarin, 98 Cal. App. 4th 140, 142 (Ct. App. 2002).
17  One of the narrow exceptions in which a court may enforce an
18  arbitration agreement is where a nonsignatory and one of the
19  parties to the agreement have a preexisting agency relationship
20  that makes it equitable to impose the duty to arbitrate on either
21  of them.  Nguyen v. Tran, 157 Cal. App. 4th 1032, 1036-37 (Ct.
22  App. 2007).

23      Separate contracts exist between Plaintiff and NID, MBA and
24  NID, and BC and NID; and all three include arbitration clauses.
25  No contract exists, however, between Plaintiff and MBA or between
26  Plaintiff and BC.  To grant Plaintiff's Motion, this Court would
27  have to find an agency relationship between BC and NID, and
28  between MBA and NID.

1    Such a relationship would render Plaintiff's claims against BC

2    and MBA subject to arbitration under Plaintiff's contract with

3    NID.

4          As their respective contracts with NID reveal, BC and MBA

5    were independent contractors and not agents of NID.  The

6    Administrative Services Agreement between NID, MBA, and BC states

7    that "[BC] is an independent contractor.  Nothing in this

8    Agreement shall create, or be construed to create, the

9    relationship of employer and employee between [NID] and [BC] or

10   as principal and agent...."  (Newman Decl. Ex. G at 73.)  The

11   Administrative Services Agreement between NID and MBA similarly

12   states that "MBA is an independent contractor.  Nothing in this

13   Agreement shall create, or be construed to create, the

14   relationship of employer and employee between [NID] and MBA, or

15   as principal and agent other than as provided in this

16   agreement...."  (Newman Decl. Ex. H at 102.)  While "[a]gency and

17   independent contractorship are not necessarily mutually exclusive

18   legal categories," <u>Mottola v. R. L. Kautz & Co.</u>, 199 Cal. App. 3d

19   98, 108 (Ct. App. 1988), this Court finds particularly compelling

20   BC and MBA's own explicit characterization of their relationship

21   with NID as independent contractors and not agents.

22         An agent is one who represents the principal in dealings

23   with third persons.  Cal. Civ. Code § 2295.  Some of BC and MBA's

24   responsibilities, as described in their respective contracts with

25   NID (Newman Decl. Exs. G & H), are akin to those of an agent

26   acting on behalf of a principal.

27   ///

28   ///

1   For purposes of an arbitration agreement, however, California law

2   does not permit such tenuous relationships as those existing

3   between BC and NID and between MBA and NID to bind nonsignatories

4   to the arbitration agreements of another.   Indeed, all cases

5   Plaintiff cites demonstrate a much closer relationship between

6   principal and agent.   <u>See</u>, <u>e.g.</u>, <u>Letizia v. Prudential Bache</u>

7   <u>Secs., Inc.</u>, 802 F.2d 1185 (9th Cir. 1986) (nonsignatory account

8   executives bound by arbitration provision in employer

9   Prudential's brokerage agreement with plaintiff); <u>Thomas v.</u>

10  <u>Perry</u>, 200 Cal. App. 3d 510 (2nd Dist. 1988) (former employee

11  bound by arbitration provision in employment contract in suit for

12  breach of oral contract against former employer and two of its

13  employees); <u>Dryer v. Los Angeles Rams</u>, 40 Cal. 3d 406, 418 (1985)

14  (nonsignatory owners, operators, and managing agents bound by

15  arbitration provision in employment contract between plaintiff

16  and employer).   Because MBA and BC were independent contractors

17  and not agents of NIC, they do not fall within the agency

18  exception to the general rule that only parties to an arbitration

19  agreement are bound by it.

20      Plaintiff also contends that, as an equitable subrogee of

21  NID, its claims against BC and MBA are subject to arbitration

22  under their contracts with NID.   The purpose of equitable

23  subrogation is "to place the burden for a loss on the party

24  ultimately liable or responsible for it and by whom it should

25  have been discharged, and to relieve entirely the insurer or

26  surety who indemnified the loss and who in equity was not

27  primarily liable therefor...."   <u>Morgan Creek Residential v. Kemp</u>,

28  153 Cal. App. 4th 675, 695 (3d Dist. 2007).

1   "The subrogated insurer is said to 'stand in the shoes' of its

2   insured, because it has no greater rights than the insured and is

3   subject to the same defenses assertable against the insured."

4   Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279,

5   1292 (1st Dist. 1998).  Under the general rule, however, an

6   insurer is not entitled to subrogation for a debt until that debt

7   has been fully discharged.  Sapiano v. Williamsburg Nat. Ins.

8   Co., 28 Cal. App. 4th 533, 536 (2nd Dist. 1994).  "In other

9   words, the entire debt must be paid.  Until the creditor has been

10   made whole for its loss, the subrogee may not enforce its claim

11   based on its rights of subrogation."  Id.

12       Plaintiff is not entitled to equitable subrogation of any

13   potential NID claims because Plaintiff has not yet paid the

14   entire amount due on Mr. Paulus's claim.  In its Complaint,

15   Plaintiff concedes as much:  "HCC Life asserts that it is

16   entitled, through subrogation, to reimbursement from MBA and BC

17   for any amounts that it pays for the Stephen Paulus claim...."

18   Compl. 10:14-16 (emphasis added).  The contrast with a later

19   statement in the same paragraph, that "HCC Life further asserts

20   that MBA and/or BC ... are obligated to pay and hold HCC Life

21   harmless for amounts that HCC Life has already paid to NID...."

22   Compl. 10:18-20, clarifies that Plaintiff has not yet paid the

23   entire Paulus claim.  Plaintiff is therefore not entitled to

24   equitable subrogation, and cannot compel arbitration under the

25   arbitration provisions of BC and MBA's contracts with NID.

26   ///

27   ///

28   ///

**CONCLUSION**

No contract exists between Plaintiff and Defendant BC or between Plaintiff and Defendant MBA, and neither Defendant ever agreed to arbitrate disputes with Plaintiff.  Because Defendants are independent contractors and not NIC's agents, they do not fall under the narrow exception to the general rule that only parties to an arbitration agreement are bound by it.  Plaintiff similarly cannot compel arbitration under the theory it is an equitable subrogee because Plaintiff has not yet fully paid the debt resulting from the Paulus claim.  For these reasons, Plaintiff's Motion to Compel Arbitration is DENIED.

IT IS SO ORDERED.

Dated: June 11, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE