UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HCC LIFE INSURANCE COMPANY, | No. 2:07-cv-02542-MCE-DAD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| MANAGED BENEFIT ADMINISTRATORS LLC; and ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, formerly known as BC LIFE AND HEALTH INSURANCE COMPANY, | |
| Defendants. | |

The Nevada Irrigation District ("NID") filed a demand for arbitration against HCC Life Insurance Company ("Plaintiff" or "HCC Life"), Managed Benefit Administrators, LLC ("MBA"), and Anthem Blue Cross Life and Health Insurance Company ("BC") arising out of a $3,000,000 claim under NID's stop loss insurance policy.  In the arbitration proceeding, Plaintiff filed a cross-demand against MBA and BC (collectively, "Defendants"), asserting that, to the extent Plaintiff is liable to NID, Defendants are liable to Plaintiff.

1

After the arbitration panel dismissed the cross-demand, Plaintiff brought this action against Defendants. In its Complaint, Plaintiff requests an Order Compelling Arbitration, Declaratory Relief for Arbitration, Subrogation, Declaratory Relief for Subrogation, Equitable Contribution, and Equitable Indemnity. Presently before the Court is Defendants' Joint Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is granted in part and denied in part.[1]

## BACKGROUND[2]

Plaintiff HCC Life provided a stop loss insurance policy to NID. Under the policy, NID established a self-funded health plan for its employees, while Plaintiff insured NID for medical expenses in excess of the policy's deductibles. In order to be subject to reimbursement under the policy, NID's expenses had to be both covered by the policy and by NID's self-funded health plan. The agreement between Plaintiff and NID required that any controversy or dispute arising out of or relating to the policy would be settled by arbitration.

///
///
///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[2] Unless otherwise noted, all factual assertions in this section are based on Plaintiff's Complaint.

Defendant MBA, formerly known as Acclaim Administrators, and Defendant BC, formerly known as BC Life & Health Insurance Company, contracted with NID to review, process, adjudicate, and pay or deny claims under NID's self-funded health plan.  Both MBA and BC have individual contracts with NID which contain arbitration clauses.

Stephen Paulus, a former NID employee covered by NID's insurance policy, underwent surgery at Sutter Memorial Hospital on September 22, 2005 to repair his mitral heart valve.  As a result of alleged complications from the surgery, Mr. Paulus died on November 5, 2005.[3]  Sutter Memorial Hospital submitted approximately $3,000,000 in charges to NID.  NID paid at least part of this claim and, on October 24, 2006, Plaintiff paid $423,282.98.

NID filed a demand for arbitration with the American Arbitration Association against Plaintiff, MBA, and BC seeking reimbursement of $1,500,000 from Plaintiff under the stop loss policy.  NID also sought exemplary and punitive damages against Plaintiff.  NID alleged that "MBA breached its Administrator Services Agreement and negligently performed its third party administrator duties, or BC Life & Health negligently performed its utilization review function, and as a consequence NID paid, and has been denied reimbursement for, medical expenses for ... Stephen H. Paulus...."  (Compl. 2:16-20.)  This arbitration proceeding is now pending.

---

[3] Plaintiff provides conflicting dates of death for Mr. Paulus:  November 5, 2005 (Compl. 5:12-13) and December 5, 2005 (Compl. 5:16).

3

Plaintiff filed a cross-demand in the arbitration, seeking reimbursement for amounts already paid to NID and for any future amounts owed to NID. On October 9, 2007, the arbitration panel granted Defendants' motion to dismiss the cross-demand, but did not provide an explanation for the decision.

Plaintiff subsequently brought this action against BC and MBA. Plaintiff seeks the relief denied in the dismissed cross-demand. In its Complaint, Plaintiff specifically requests an order compelling arbitration, declaratory relief for arbitration, subrogation, declaratory relief for subrogation, equitable contribution, and equitable indemnity. Plaintiff alleges Defendants failed to work together and that their actions resulted in excessive and unnecessary medical procedures and services, experimental and investigative medical procedures and services, and charges above reasonable and customary amounts. Plaintiff separately filed a Motion to Compel Arbitration, which this Court denied. Defendants now move to dismiss Plaintiff's Complaint.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

///
///

4

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

///

**ANALYSIS**

**1.   Order Compelling Arbitration and Declaratory Relief**

In a concurrently issued order, this Court found no basis to compel arbitration in this case.  The reasoning in the concurrently issued order is incorporated herein by reference. For the reasons stated in the concurrently issued Order, Plaintiff does not state a cause of action for an order to compel arbitration, nor does it state a cause of action for declaratory relief regarding arbitration.  Accordingly, Plaintiff's First and Second Causes of Action are dismissed without leave to amend.

**2.   Subrogation**

In its concurrently issued Order denying Plaintiff's Motion to Compel Arbitration, this Court addressed Plaintiff's Third Claim for Subrogation against Defendants.  The purpose of equitable subrogation is "to place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor...." Morgan Creek Residential v. Kemp, 153 Cal. App. 4th 675, 695 (3d Dist. 2007).  Under the general rule, an insurer is not entitled to subrogation for a debt until that debt has been fully discharged. Sapiano v. Williamsburg Nat'l Ins. Co., 28 Cal. App. 4th 533, 536 (2nd Dist. 1994).  "In other words, the entire debt must be paid.
///

Until the creditor has been made whole for its loss, the subrogee may not enforce its claim based on its rights of subrogation." Id.

Plaintiff is not entitled to equitable subrogation of any potential NID claims because Plaintiff has not yet paid the entire amount due on Mr. Paulus's claim.  In its Complaint, Plaintiff concedes as much:  "HCC Life asserts that it is entitled, through subrogation, to reimbursement from MBA and BC for any amounts that it pays for the Stephen Paulus claim...." (Compl. 10:14-16) (emphasis added).

Plaintiff's contention that it has already paid the Paulus claim in full is unconvincing and contrary to the principles behind the established rule.  Plaintiff states it discharged the "whole debt" when it remitted $432,282.98 to NID on October 24, 2006 (Opp'n to Def.'s Mot. to Dismiss 9:19-22), and that Plaintiff does not owe NID the balance of NID's $3,000,000 claim. Plaintiff cites no legal authority to support its contention that as long as an insurer admits no sums "are in fact owing," even where the insurer has not paid all of the insured's debt, the insurer is entitled to equitable subrogation.  Such a rule, if adopted, would eviscerate the general rule that an insurer is not entitled to subrogation until it has fully paid the insured's debt.  Insurers would simply refrain from admitting that sums "are in fact owing," and, on that basis, avoid paying the debt.

Plaintiff has not fully discharged its debt to NID, and therefore has no right to equitable subrogation.  Accordingly, Defendants' Motion to Dismiss as to Plaintiff's Third Claim for Subrogation Against Defendants is granted with leave to amend.

7

### 3. Declaratory Relief for Subrogation

Although an insurer who has not fully discharged a debt is generally not entitled to equitable subrogation, a party asserting subrogation may seek declaratory relief without paying the underlying debt. See Liberty Mut. Ins. Co. v. Harris, Kerr, Forster & Co., 10 Cal. App. 3d 1100 (2nd Dist. 1970). In Liberty Mutual, the Court of Appeal acknowledged the general rule that a party seeking subrogation must fully discharge a debt before recovering damages. Id. at 1102. The court noted that, should it find otherwise, an insurer would be "encouraged to refuse payment by denying liability and asserting that if the insurer is liable to the insured, a third person is liable to the insurer." Id. at 1103. As a result, "the insured who has paid for the right to be promptly indemnified for his loss remains unpaid." Id. The court nonetheless concluded that controlling decisions permitted the "undesirable situation" in which an insurer could bring a subrogation claim for declaratory relief without paying the underlying debt. Id.

A California Court of Appeal recently affirmed the continuing validity of Liberty Mutual, noting that "in suitable circumstances, the party asserting the right of subrogation may seek declaratory relief on this matter without paying the underlying debt." Plut v. Fireman's Fund Ins. Co., 85 Cal. App. 4th 98, 106 (2nd Dist. 2000) (citing Liberty Mutual, 10 Cal. App. 3d at 1102-04).

///

///

This case does not present the "suitable circumstances" in which a "party asserting the right of subrogation may seek declaratory relief ... without paying the underlying debt." Plut, 85 Cal. App. 4th at 106.  In Liberty Mutual, the appellants sought only declaratory relief on a "a sort of 'presubrogation' theory." 10 Cal. App. 3d at 1102.  They did not request relief under claims of both subrogation and declaratory relief for subrogation.  Further, the lower court in Liberty Mutual had already issued a final order of dismissal.  Here, the arbitration proceeding is pending.  Although this Court has granted Defendants' Motion to Dismiss as to the subrogation claim, that claim is dismissed with leave to amend.  If Plaintiff pays the balance of its debt to NID, Plaintiff may be able to assert valid claims for equitable subrogation and declaratory relief for equitable subrogation in an amended complaint.  Because these are not suitable circumstances for declaratory relief, Defendants' Motion to Dismiss as to Plaintiff's Fourth Claim for Declaratory Relief for Subrogation Against Defendants is granted with leave to amend.

**4.   Equitable Contribution**

"[A] party to a joint, or joint and several obligation who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Cal. Civ. Code § 1432.  An equitable contribution claim arises not from contract but from equity.
///

1  Crowley Mar. Corp. v. Boston Old Colony Ins. Co., 158 Cal. App.
2  4th 1061, 1066 (1st Dist. 2008).  "In situations where two or
3  more parties are jointly liable on an obligation and one of them
4  makes payment of more than his share, the one paying possesses a
5  new obligation against the others for their proportion of what he
6  has paid for them."  Morgan Creek, 153 Cal. App. 4th at 684
7  (citing Borba Farms, Inc. v. Acheson, 197 Cal. App. 3d 597,
8  601-02 (4th Dist. 1988)).  "The purpose of this rule of equity is
9  to accomplish substantial justice by equalizing the common burden
10 shared by [co-obligors], and to prevent one [obligor] from
11 profiting at the expense of others."  Fireman's Fund Ins. Co. v.
12 Md. Cas. Co., 65 Cal. App. 4th 1279, 1293 (1st Dist. 1998).
13     The right to equitable contribution does not, as Defendants
14 contend, require parties to be insurers.  See Cal. Civ. Code
15 § 1432.  Nor does this right require a preexisting contractual
16 relationship.  Crowley, 158 Cal. App. 4th at 1066.  Under § 1432,
17 the right "rests upon principles of equity and natural justice,"
18 Jessup Farms v. Baldwin, 33 Cal. 3d 639, 651 n.7 (1983), applying
19 only where "the parties are under a common burden of liability,"
20 Weinberg Co. v. Heller, 73 Cal. App. 769, 779 (2nd Dist. 1925).
21     Plaintiff has pled facts sufficient to support a claim of
22 equitable contribution against Defendants.  Plaintiff does not
23 assert that Defendants were insurers, nor that Plaintiff had any
24 direct contractual relationship with Defendants.  Plaintiff
25 charges "[i]t was MBA's and/or BC's responsibility to review,
26 process and adjudicate the expenses submitted by Mr. Paulus'
27 medical providers.  They failed to perform these duties causing
28 NID's plan to pay amounts that were not covered under the plan."

10

1  (Compl. 6:2-4.)  Plaintiff further alleges:

2      MBA and BC were responsible for reviewing, processing and accurately adjudicating the medical claim at issue in addition to coordinating benefits to insure cost containment.  They were negligent in performing these duties and their failure was a breach of any all [sic] agreements they had with NID.  As a result, any amounts for which NID is entitled to be reimbursed by HCC Life should ultimately be borne by MBA and BC.

7  (Compl. 6:22-26.)  Should the arbitration panel determine Plaintiff and Defendants are jointly liable, Plaintiff may have a valid claim for equitable contribution.  Accordingly, Defendants' Motion to Dismiss as to Plaintiff's Fifth Claim for Equitable Contribution Against Defendants is denied.

### 5. Equitable Indemnity

The doctrine of equitable indemnification permits liability to be apportioned based on the relative culpability of wrongdoers.  <u>Miller v. Ellis</u>, 103 Cal. App. 4th 373, 379 (1st Dist. 2002).  Equitable indemnification "is premised upon the principle that ... <u>joint tortfeasors</u> should share the burden of discharging the legal obligation to the injured party for the damages caused by their mutual negligence."  <u>Id</u>. at 379-80 (emphasis added).  As a condition of equitable indemnity, there must be some basis for tort liability against the proposed indemnitor, usually involving breach of a duty owed to the plaintiff.  <u>Stonegate Homeowners Ass'n v. Staben</u>, 144 Cal. App. 4th 740, 751 (2nd Dist. 2006).

///
///

1 "The distinction between tort and contract is well grounded
2 in common law, and divergent objectives underlie the remedies
3 created in the two areas.  Whereas contract actions are created
4 to enforce the intentions of the parties to the agreement, tort
5 law is primarily designed to vindicate social policy." <u>Erlich v.
6 Menezes</u>, 21 Cal. 4th 543, 550-51 (1999) (internal quotations
7 omitted).  Although the breach of a legal duty created by
8 contractual obligation may support an action in tort, "conduct
9 amounting to a breach of contract becomes tortious only when it
10 also violates a duty independent of the contract arising from
11 principles of tort law."  <u>Id</u>. at 551.  The statutory distinction
12 between tort and contract remedies would be meaningless if every
13 negligent breach of a contract gave rise to tort damages.  <u>Id</u>. at
14 554.  Negligent performance of a contract gives rise to contract
15 damages only, and will not support a claim for equitable
16 indemnity.  <u>Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med.
17 Group</u>, 143 Cal. App. 4th 1036, 1044 (1st Dist. 2006).

18     Plaintiff has failed to plead facts sufficient to establish
19 that Defendants breached a duty independent of their contracts.
20 The only mention of tortious conduct in the entire Complaint
21 consists of NID's quoted allegation that "MBA breached its
22 Administrative Services Agreement and negligently performed its
23 third party administrator duties, or BC Life & Health negligently
24 performed its utilization review function."  (Compl. 2:16-18.)
25 Assuming both MBA and BC negligently performed their contracts,
26 Plaintiff would have no grounds to bring a claim for equitable
27 indemnity under <u>Stop Loss</u>.
28 ///

12

Plaintiff's reference to MBA's "breach[] [of] its Administrative Services Agreement" suggests, at most, a negligent performance of its contract.  The Administrative Services Agreement between NID, MBA, and BC established BC's responsibility to perform its "utilization review function."

Plaintiff has failed to establish that the allegedly negligently performed duties arose independently of the contracts.  Plaintiff's allegations do not establish tortious behavior and therefore cannot support an equitable indemnification claim.  Accordingly, Defendants' Motion to Dismiss as to Plaintiff's Sixth Claim for Equitable Indemnification Against Defendants is granted with leave to amend.

## CONCLUSION

Defendants' Joint Motion to Dismiss is GRANTED without leave to amend as to Plaintiff's First Claim for an Order Compelling Arbitration and Second Claim for Declaratory Relief for Arbitration.  The Motion is GRANTED with leave to amend as to Plaintiff's Third Claim for Subrogation, Fourth Claim for Declaratory Relief for Subrogation, and Sixth Claim for Equitable Indemnity.  The Motion is DENIED as to Plaintiff's Fifth Claim for Equitable Contribution.

///
///
///
///

In light of this Court's ruling on the separately filed Motion To Compel Arbitration, the request for a stay of the action pending the decision on the Motion To Dismiss is now moot.

IT IS SO ORDERED.

Dated: June 11, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE